UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

DELROY PITTERSON,                                    :

                          Petitioner,               :

     - against-                                       :

WILLIAM LEE,                                         :

                         Respondent.              :

-------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   7/29/11

**REPORT AND
RECOMMENDATION
TO THE HONORABLE
COLLEEN McMAHON**[*]

10 Civ. 7289 (CM) (FM)

**FRANK MAAS**, United States Magistrate Judge.

        On May 9, 2005, a jury sitting in Supreme Court, Bronx County, convicted

petitioner Delroy Pitterson ("Pitterson") of Assault in the First Degree (two counts),

Attempted Assault in the First Degree, Assault in the Second Degree, and Criminal

Possession of a Weapon in the Second and Third Degrees.  Thereafter, on May 25, 2005,

Justice Judith Lieb, before whom the case was tried, sentenced Pitterson to concurrent

determinate terms which, in the aggregate, amount to a sentence of twenty years in jail, to

be followed by five years of post-release supervision.  Pitterson is presently serving that

sentence at the Green Haven Correctional Facility in Stormville, New York.  Pitterson,

who is proceeding pro se in this action, now seeks a writ of habeas corpus, pursuant to 28

U.S.C. § 2254, vacating his conviction.

---

       [*]      This Report and Recommendation was prepared with the assistance of Erika
Mayo, a student at Hastings College of the Law.

The Respondent has moved to dismiss Pitterson's petition ("Petition" or "Pet.") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, contending that the Petition is time-barred under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d)(1).  (ECF No. 6).  For the reasons set forth below, the Court should grant that motion.

I.     Background

     A.     Trial

          1.     People's Case

The evidence introduced at trial as part of the People's case-in-chief established as follows:

In late 2001, Pitterson began a romantic relationship with a woman named Eunice Deacon ("Deacon").  (T. 1, 10).[1]  In January 2003, Deacon told Pitterson that she wanted to be friends, and nothing more.  (See id. at 10-11).  Although Pitterson was not receptive to this proposal, the two continued to spend time together over the next several months without "carry[ing] on any physical relationship."  (Id. at 11-13, 29-31).

On the evening of June 10, 2003, Deacon was ordering food at a restaurant in the Bronx for herself, her children, and her friend Andrew when she observed Pitterson leaning against her car, which was parked outside the restaurant.  (Id. at 31-34).  Pitterson had seen Andrew driving Deacon's car earlier that night and began questioning her about

---

[1]     "T." refers to the trial transcript.  "Ex." refers to the exhibits attached to the Declaration of Assistant District Attorney Nancy D. Killian ("Killian Decl."), dated December 15, 2010, in support of the Respondent's motion to dismiss.  (ECF No. 6)

the matter, but Deacon said that it was none of his business.  (Id. at 36).  Deacon left the restaurant after receiving her food; she did not see Pitterson when she left.  (Id. at 39).

When Deacon arrived at her apartment building, Pitterson was outside, talking with her daughter.  Although Pitterson tried to talk to Deacon, she ignored him and went upstairs to her apartment with her daughter.  Andrew arrived at Deacon's apartment a few minutes later.  Shortly thereafter, Pitterson appeared in the apartment, although Deacon had not allowed him to enter.  He began talking about all the things that he had done for Deacon, asking her "how [she] could do him like this."  At Deacon's insistence, Pitterson eventually left, although he called her several times later that night. (Id. at 39-41).

The next morning, at approximately 6:45 a.m., Deacon was walking into her building when Pitterson approached her from behind, stating that he needed to talk to her.  (Id. at 45-47, 54-55).  Deacon told him that she did not have time, but Pitterson refused to take "no" for an answer.  (Id. at 45-47).  He would not allow Deacon to pass, insisting that they needed to talk right then.  (Id. at 60-62).  After Deacon repeatedly told Pitterson that she could not talk to him, he reached into his waistband, pulled out a gun, and pointed it at her.  (Id. at 62-66).

At that point, Deacon dropped to the ground and was crying and flailing her body wildly.  (Id. at 66).  She heard Pitterson fire four shots, the last of which hit her in her left hand.  (See id. at 67, 83-84, 89).  The gun then apparently jammed, giving Deacon the opportunity to open the door to her building and escape outside.  (Id. at 69).  Pitterson

pursued her, however, hitting her in the back of her head with the gun and kicking her as she lay on the ground.  (Id. at 69-70).  When Deacon was able to get to her feet, she observed Pitterson take the gun apart and toss it into an alley adjacent to her building.  (Id. at 70-71).

Deacon then started running away.  (Id. at 71-72).  As she was running, she looked back in the direction of her building and saw Pitterson get into his van and begin driving toward her.  (Id. at 72-74).  Deacon continued running on the sidewalk and turned onto another street.  (Id. at 73-74).  Pitterson pursued her, however, driving his van onto the sidewalk where she was running.  (Id. at 74-75).  Eventually, Pitterson hit Deacon with the van, sending her flying into the street.  (Id. at 75-76).  Pitterson then fled the scene.  (See id. at 76).

Deacon was taken to Jacobi Medical Center, where she was hospitalized for thirteen days.  (Id. at 77).  In addition to the gunshot wound to her hand, Deacon had sustained a dislocated shoulder and elbow, fractured ribs, and abrasions on her lungs and liver.  (Id. at 78-80).

Pitterson voluntarily surrendered himself to the police at the 47th Precinct at approximately 8 a.m., on the day of the shooting, telling an officer, "I shot my wife.  I think I might have ran her over with my vehicle.  I think I might have killed her."  (Id. at 503-04).

2.    <u>Defense Case</u>

Pitterson was the principal defense witness.  (<u>Id.</u> at 960-1080).   He testified

that, on the morning of June 11, 2003, he saw Deacon outside her apartment building,

across the street from his own residence, and struck up a conversation with her as she

walked into her building.  (<u>See id.</u> at 962, 1017).   He then followed her into the building,

where they continued talking in the lobby.  (<u>Id.</u> at 1017-18).   Pitterson testified that he

reminded Deacon that she owed him money and asked how she intended to repay him.

(<u>Id.</u> at 1018, 1037).  According to Pitterson, Deacon then suddenly removed a gun from a

black pouch that she was carrying and fired two shots, neither of which hit Pitterson.  (<u>Id.</u>

at 1019-20, 1030, 1038).  A struggle over the gun ensued, during which two additional

shots were fired.  (<u>Id.</u> at 1038).

The next thing Pitterson remembered was lying on the ground in front of

the door to Deacon's apartment building.  After Pitterson stood up, he saw Deacon get to

her feet, open the door, and leave the building.  Pitterson noticed the gun on the floor of

the lobby away from the door.  He picked it up, brought it outside, and tossed it away at

the rear of the building, "for [a] reason, [he] d[id]n't know," as he "wasn't thinking" at

that time.  (<u>Id.</u> at 1038-41).

Pitterson then entered his vehicle and began driving.  He testified that he

was "sweating[,] . . . scared[,] . . . frightened[,] . . . stunned[,] . . . [and] weak," and did

not know where he was going; he "just want[ed] to leave the block."  As he made a right

turn, however, Deacon suddenly appeared in front of the vehicle, and he hit her.  Pitterson

claimed that he was not driving on the sidewalk at that time.  (Id. at 1041-44).

In light of the chaotic nature of the situation, Pitterson concluded that "the

best thing for [him] to do [wa]s to go to the police."  (Id. at 1049-50).  Upon arriving at

the 47th Precinct, he told one of the officers standing outside that he "came here to get

arrested because [he] thought [he had] run over [his] lady."  (Id. at 1056).

3.    Verdict and Sentencing

On May 9, 2005, the jury convicted Pitterson of Assault in the First Degree

(two counts), Attempted Assault in the First Degree, Assault in the Second Degree, and

Criminal Possession of a Weapon in the Second and Third Degrees.[2]  (Id. at 1416-18).

On May 25, 2005, Justice Lieb sentenced Pitterson to concurrent

determinate terms which, in the aggregate, amount to a sentence of twenty years in jail, to

be followed by five years of post-release supervision.  (Ex. 1 at 26).

B.    Subsequent Procedural History

Pitterson appealed his convictions to the Appellate Division, First

Department, (see Ex. 1), which unanimously affirmed his conviction on November 8,

2007.  People v. Pitterson, 845 N.Y.S.2d 255 (1st Dep't 2007).  Thereafter, on February

25, 2008, Judge Susan P. Read of the New York Court of Appeals denied Pitterson's

---

[2]      The jury acquitted Pitterson of Attempted Murder in the Second Degree and
was unable to reach a verdict on a charge of Reckless Endangerment in the First Degree.
(Id. at 1416-18).

6

application for leave to appeal.  People v. Pitterson, 10 N.Y.3d 770 (2008).  Pitterson did

not seek a writ of certiorari.

On July 22, 2009, more than one year after his time to file a certiorari

petition had expired, Pitterson filed a pro se motion to vacate his judgment of conviction

pursuant to Section 440.10 of the New York Criminal Procedure Law.  (Ex. 6).  Pitterson

also submitted an "addendum" to his Section 440.10 motion on September 9, 2009.

(Killian Decl. ¶ 9).   Justice Lieb denied the Section 440.10 motion on March 4, 2010.

(Ex. 8).

Pitterson's Petition is dated September 10, 2010, and was received by the

Pro Se Office of this Court on September 16, 2010.  (See ECF No. 1).  After Your Honor

referred the matter to me for a Report and Recommendation, the Respondent moved to

dismiss the Petition on December 16, 2010.  (ECF Nos. 3, 6).  Following an extension of

the time to reply, Pitterson filed a Reply Memorandum of Law on May 2, 2011.  (ECF

No. 13 ("Reply Mem.")).

II.    Discussion

A.    Timeliness

AEDPA provides, in pertinent part, that a "1-year period of limitation shall

apply to an application for a writ of habeas corpus by a person in custody pursuant to the

judgment of a State court."  28 U.S.C. § 2244(d)(1).  The limitations period begins to run

on the latest of four triggering dates:

7

(A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id. § 2244(d)(1)(A)-(D).

In his Petition, Pitterson does not contend that the State prevented him from filing his Petition.  (See Pet. & Pet. Attach.).  Pitterson also does not seek to obtain relief on the basis of a newly-recognized constitutional right, or allege that the factual bases of his claims were unknown to him at any time prior to filing his Petition.  (See id.). Accordingly, the relevant triggering date in this case is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).

The Second Circuit has held that "a petitioner's conviction becomes final for AEDPA purposes when his time to seek direct review in the United States Supreme Court by writ of certiorari expires."  Williams v. Artuz, 237 F.3d 147, 150 (2d Cir. 2001)

8

(internal quotation marks and brackets omitted).  A party has ninety days in which to file a petition for a writ of certiorari requesting review of a state court decision.  Sup. Ct. R. 13(1); Bowles v. Russell, 551 U.S. 205, 212 (2007); Saunders v. Senkowski, 587 F.3d 543, 547 (2d Cir. 2009); Valverde v. Stinson, 224 F.3d 129, 132 (2d Cir. 2000).  Here, Judge Read denied Pitterson's application for leave to appeal to the Court of Appeals on February 25, 2008.  Pitterson, 10 N.Y.3d at 770.  Accordingly, because Pitterson did not file a petition for a writ of certiorari, the limitations period began to run ninety days later on May 25, 2008.  Pitterson therefore was required to file his Petition by May 25, 2009.

Under the "prison mailbox rule," an imprisoned petitioner proceeding pro se is deemed to have filed his petition on the date he delivered it to prison officials to be mailed.  See Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001).  The Petition indicates that Pitterson delivered it to prison authorities to be mailed on September 10, 2010, (see Pet. at 6), approximately two years and three months after the date his conviction became final.  Accordingly, unless Pitterson is able to establish some basis for overcoming the AEDPA statute of limitations, his Petition must be dismissed as untimely.

B.    Overcoming the Statute of Limitations

Pitterson appears to acknowledge that his Petition is untimely, as the Petition sets forth a number of reasons why the statute of limitations should not operate as a bar in this case.  (See id. ¶ 14).  Specifically, Pitterson contends that, because his Section 440.10 motion was "recently denied, . . . the one year time limit should still be intac[t]."  (Id.).  Additionally, Pitterson claims that the Court should excuse the

9

untimeliness of his Petition because (a) his "knowledge of the court system is vague;" (b) his "knowledge of the law" is poor; (c) his appellate counsel failed to inform him that the Court of Appeals had denied his application for leave to appeal "until six months after" the decision was issued; (d) he has been "mainly depending on other inmates" to assist him in prosecuting his claims for post-conviction relief; (e) there was a lack of typing and printing supplies in the prison law library; and (f) he was not given access to the law library for a period of nine weeks.  (Id.; Reply Mem. at 41-44).  Pitterson further asserts that he "does not see [his conduct] as breaking the law, [as he] was only trying to protect his life," and therefore asks the Court to review his Petition "in the interest of justice" so as to "correct th[e] great injustice that has been done in this case."  (Pet. ¶ 14). Construing these allegations liberally, Pitterson seeks to overcome the statute of limitations on the basis of statutory tolling, as well as the doctrines of equitable tolling and actual innocence.  None of these possible bases for relief warrants consideration of his untimely Petition.

   1. Statutory Tolling

   Section 2244(d)(2) provides that the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).  This provision is of no help to Pitterson since he filed his Section 440.10 motion on July 22, 2009, approximately two months after the limitations period had expired.  See Fernandez v. Artuz, 402 F.3d 111,

10

116 (2d Cir. 2005) ("To toll the AEDPA statute of limitations, the state petition must be . . . 'pending' during the tolling period."); Menjivar v. Sears, No. 06 Civ. 2854, 2007 WL 2274892, at *3 (E.D.N.Y. Aug. 7, 2007) ("A [Section] 440 motion . . . does not revive a period that has already lapsed."). Pitterson therefore must look elsewhere to overcome the untimeliness of his Petition.

      2.    Equitable Tolling

      In its recent decision in Holland v. Florida, the Supreme Court held that the statute of limitations set forth in Section 2244 "is subject to equitable tolling in appropriate cases." 130 S. Ct. 2549, 2560 (2010). Under the doctrine of equitable tolling, a court may entertain an otherwise untimely habeas petition if the petitioner establishes: "[a] that he has been pursuing his rights diligently, and [b] that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 2562 (internal quotation marks omitted). "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." Harper v. Ercole, — F.3d — , 2011 WL 3084962, at *4 (2d Cir. July 26, 2011). The Second Circuit has "set a high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling." Dillon v. Conway, 642 F.3d 358, 363 (2d Cir. 2011). In practice, that court has found "extraordinary circumstances" to be present in only a handful of circumstances. See, e.g., id. at 363-64 (attorney affirmatively misled petitioner by promising that he would file the petition before the "last day to file the petition," in response to petitioner's request to file

11

the petition earlier); Diaz v. Kelly, 515 F.3d 149, 154-55 (2d Cir. 2008) (state appellate

court failed to inform prisoner that leave to appeal was denied); Baldayaque v. United

States, 338 F.3d 145, 150-53 (2d Cir. 2003) (attorney failed to file a habeas petition,

despite explicit directions to do so); Valverde, 224 F.3d at 133 (corrections officer

intentionally confiscated prisoner's petition shortly before the filing deadline).

        None of Pitterson's alleged bases for equitable tolling comes close to

meeting this "high bar."  First, unfamiliarity with the court system and ignorance of the

law are no more grounds for equitable tolling than they are defenses to criminal charges.

See Smith v. McGinnis, 208 F.3d 13, 18 (2d Cir. 2000) (petitioner's pro se status "does

not merit equitable tolling"); Francis v. Miller, 198 F. Supp. 2d 232, 235 (E.D.N.Y. 2002)

(petitioner's assertion that he was "ignorant of the law and legal procedure" is insufficient

to warrant equitable tolling).  That Pitterson "mainly depend[ed] on other inmates" to

assist him in prosecuting his claims is equally unavailing.  See Smith, 208 F.3d at 18;

Chan v. United States, No. 00 Civ. 862 (ILG), 2000 WL 1843290, at *2 (E.D.N.Y. Oct.

25, 2000) (no extraordinary circumstances where petitioner was forced to rely "on inmate

jail house lawyers" and his attempts to obtain legal advice from fellow inmates were not

"fruitful").  Pitterson's contentions that he was denied access to the law library and that

the law library lacked adequate supplies similarly fail to warrant equitable tolling.  See

Corrigan v. Barbery, 371 F. Supp. 2d 325, 330 (W.D.N.Y. 2005) ("In general, the

difficulties attendant on prison life, such as transfers between facilities, solitary

confinement, lockdowns, restricted access to the law library, and an inability to secure

court documents, do not by themselves qualify as extraordinary circumstances.").

      Finally, even assuming that Pitterson's appellate counsel failed to provide

timely notice that the Court of Appeals had denied his application for leave to appeal,

(Pet. ¶ 14), both the Supreme Court and the Second Circuit have made clear that attorney

misconduct must be truly egregious to justify equitable tolling.  See Holland, 130 S. Ct. at

2564 ("a garden variety claim of excusable neglect . . . does not warrant equitable

tolling") (quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990) (internal

quotation marks omitted)); Baldayaque, 338 F.3d at 152 ("attorney error normally will

not constitute the extraordinary circumstances required to toll the AEDPA limitations

period") (emphasis in original).  Here, Pitterson claims that counsel did not advise him of

the denial of leave to appeal "until six months after the ruling."  (Pet. ¶ 14).  Annexed to

his Petition, however, is a letter from his appellate counsel advising him that his

application for leave to appeal had been denied, and cautioning that "there is a one-year

deadline to file [a] [habeas] petition from the date of the Court of Appeals' denial of

leave."  (Pet. Attach.).  The letter is dated June 2, 2008, which was just over three months

after the Court of Appeals denied leave.  Even if the Court were to assume that Pitterson

lacked notice of the denial of his leave application for three additional months after

counsel's letter was sent, Pitterson had nearly nine months in which to file a timely

petition.  Given this extensive window, he cannot show that any "extraordinary

circumstances" kept him from complying with AEDPA's time requirements.

3.     Actual Innocence

The Second Circuit has not yet determined whether a credible claim of "actual innocence" provides a "gateway" through which habeas petitioners may pass to have their otherwise time-barred claims heard on the merits.[3]  See Doe v. Menefee, 391 F.3d 147, 160-61 (2d Cir. 2004).  Nevertheless, the Second Circuit has "instructed district courts faced with untimely petitions in which the petitioner asserts his or her actual innocence to determine, in each case, whether the petitioner has presented a credible claim of actual innocence before ruling on the legal issue[] of whether such a showing" entitles him to invoke an "actual innocence" exception to AEDPA's statute of limitations. Id. at 161 (emphasis added).  In order to make the first showing, a petitioner must demonstrate that it is "more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." Id. at 162 (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).  In addition, the petitioner must present "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." House v. Bell, 547 U.S. 518, 537 (2006); Menefee, 391 F.3d at 161-62.

Pitterson has failed to adduce any "new reliable evidence" demonstrating his innocence.  In light of this failure, there is no reason for the Court to question the

---

[3]     However, one Judge in this District has concluded that Section 2244 does afford such a gateway.  See Garcia v. Portuondo, 334 F. Supp. 2d 446, 456-62 (S.D.N.Y. 2004) (Kaplan, D.J.).

jury's verdict, and he cannot rely on any potential "actual innocence" exception to AEDPA.

III.    Conclusion

For the foregoing reasons, the Respondent's motion to dismiss, (ECF No. 6), should be granted.

IV.    Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Colleen McMahon and to the chambers of the undersigned at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge McMahon. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

Dated:      New York, New York
            July 29, 2011

                                        FRANK MAAS
                                        United States Magistrate Judge

15

Copies to:

Delroy Pitterson
05-A-3002
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582

Nancy D. Killian, Esq.
Office of the District Attorney, Bronx County
Fax:  (718) 590-6523